**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LORETTA NOTTINGHAM, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | No. 05-1020-MLB |
| ) | |
| WILSON COUNTY SHERIFF'S ) | |
| DEPARTMENT, WILSON COUNTY ) | |
| BOARD OF COMMISSIONERS, WILSON ) | |
| COUNTY, and THOMAS SCHULTZ, in ) | |
| his Official and Individual ) | |
| Capacities, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Loretta Nottingham filed suit against her former employer Wilson County and Thomas Suchultz, the jail administrator, alleging violations of federal and state law. Plaintiff's claims allege sexual harassment, hostile environment, gender discrimination and retaliation. This case comes before the court on defendants' motion for summary judgment. (Doc. 37). The motion has been fully briefed and is ripe for decision. (Docs. 38, 42, 43). Defendants' motion is granted in part and denied in part for reasons herein.

**I.  FACTS**

Nottingham began working for Wilson County as a corrections officer in October 2002. In early fall 2003, Nottingham was off work for approximately four weeks due to a hysterectomy. Thomas Shultz was hired as a corrections administrator in September 2003. At some point in September or October 2003, Nottingham approached Shultz to inform him that she was ready to return to work. This was the first meeting

that occurred between Nottingham and Shultz. Shultz requested that Nottingham provide a release. Nottingham alleges that Shultz then asked her to come and sit on his lap. At some time prior to December, Shultz made the comment that he did not care if the females were "freezing their tits off" at the jail. (Doc. 38 at 3-4; exh. A at 44-45, 49-50).

On the evening of December 6 until the morning of December 7, Nottingham was working the 6 p.m. to 6 a.m. shift at the jail. This was her normal shift. Shultz ordinarily only worked during the day. At some point in the evening, Shultz came to the jail. This was the first occasion that Shultz worked with Nottingham. On this occasion, Nottingham has alleged that numerous incidents occurred.

> 1) [Shultz] simulated sexual acts occurring between two women while discussing how a particular sex toy (dildo) would be used by them and inserted into their vaginas simultaneously;
> 2) after instructing Scott Lerch, Ms. Nottingham's male co-worker, to throw the dildo into the trash, Schultz then instructed Lerch to "keep Nottingham away from the trash, like [she] was going to get it out for some reason";
> 3) Schultz referred to his genitalia as a "dead weapon" in the context of joking to Ms. Nottingham about potential accusations of him raping female inmates;
> 4) Schultz described to Ms. Nottingham how much room he had in his underwear, (see also Nottingham Depo., pg. 86:24-87:18);
> 5) Schultz made Ms. Nottingham enter a closet with him where he attempted to touch her while sizing shirts and pants against her body. Ms Nottingham maintained a small distance from Schultz by stepping back away from him out of "instinct" as he attempted to approach her (see also Nottingham Depo., pg. 90:7-16);
> 6) Schultz told Ms. Nottingham that her male co-worker's "shirt would come off easier" than hers, inferring that her breasts would get in the way (see also Id., pg. 91:18-24.);
> 7) Schultz told Ms. Nottingham that if she tried on a uniform to "let him know so he could watch. He paused and said, 'Watch guard.'" (See also Nottingham Depo., pg. 91:18-24); and
> 8) Schultz engaged in an unwelcome touching of Ms.

>Nottingham by grabbing her jacket without permission and referring to her breasts while doing so.

(Doc. 42 at 16-17; see also Doc. 38 at 8-11).

During this evening, Shultz also informed Nottingham that she should not allow the doors to remain open due to inmate safety issues. Nottingham responded that the prior jail administrator allowed the doors to remain open and allowed the officers to provide danishes and coffee to inmates. Shultz also questioned Nottingham about her knowledge of Lerch smoking in the control room. Nottingham responded that she did not know it smelled like smoke. (Doc. 38 at 7-8).

At some point, Nottingham drafted memoranda addressed to various jail and county officials. Nottingham, however, failed to deliver these complaints during her employment. Nottingham attempted to deliver the complaint to the Sheriff, but was informed by a dispatcher that the Sheriff was under investigation for similar conduct and that it would be appropriate to inform another official. Nottingham attempted to make a complaint to County Attorney Chard, but was told that she could not discuss a complaint since Chard was required to be in court at that time. Nottingham then attempted to make a complaint to Kris Marple, the county coordinator, but was informed that she needed to discuss the complaint with Chard. At that time, Nottingham did not discuss the basis for her complaint with any of these officials. (Docs. 38 at 12-13; 42 at 5).

On January 8, 2004, Schultz spoke with Nottingham about the concerns with her work performance that he observed in December. Shultz also addressed allegations that Nottingham called an inmate a "snitch," brought inmates coffee and rolls and allowed them to use the

-3-

phone without permission. On January 14, 2004, Schultz called Nottingham into his office. Lt. Harbers was also present. Schultz asked Nottingham if she had told an inmate that he could sue the jail for spider bites. Nottingham denied the accusation. Nottingham's employment was terminated. After her termination, Nottingham filed a complaint with county attorney Chard. (Doc. 38 at 16-17, 19).

## II.  SUMMARY JUDGMENT STANDARD: FRCP 56

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). In determining whether a genuine issue of material fact exists, the court "view[s] the evidence in a light most favorable to the non-moving party." Qwest Corp. v. City of Santa Fe, N.M., 380 F.3d 1258, 1265 (10th Cir. 2004) (quotation omitted). Where, as here, a party seeks summary judgment regarding some, but not all, of the facts or issues in the case, Rule 56(d) authorizes the court to craft an order disposing of those issues for which there is no need for a trial.

## III. ANALYSIS[1]

---

[1] Plaintiff has conceded that the Wilson County Sheriff's Department has no capacity to sue. Plaintiff has also removed her section 1983 claims against all defendants and her Title VII claims against Shultz in his personal capacity. (Doc. 42 at 14-15).

-4-

**A.   Hostile Environment**

Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment. See 42 U.S.C. § 2000e-2(a)(1); Hirschfeld v. New Mexico Corrections Dep't, 916 F.2d 572, 575 (10th Cir. 1990).  This harassment occurs where "[sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed.2d 49 (1986) (quoting 29 C.F.R. § 1604.11(a)(3) (1985)).  To form the basis of a claim, the sexual harassment "must be sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." Id. at 67 (internal citations omitted). In addition to having to prove that she was subjected to a sexually hostile work environment, plaintiff must also establish a basis for imposing liability on the county.  See Ford v. West, 222 F.3d 767, 775 (10th Cir. 2000).

The United States Supreme Court has stated "that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions

---

Plaintiff, however, has insisted that her Title VII claim against Shultz in his official capacity is proper.  A plaintiff may name a supervisor as a plaintiff in his official capacity for a Title VII suit.  Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996).  This practice, however, is only acceptable if the employee has not also named the employer since an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed.2d 114 (1985).  Accordingly, naming both Shultz and the county is repetitive.  Plaintiff must remove either Shultz or the county as a party.

of employment. These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84 (1998). Accordingly, an actionable hostile work environment requires conduct that is either "pervasive or if there was only a single incident of harassment which, standing alone, was sufficiently severe." Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170 (10th Cir. 1996).

Shultz' actions do not rise to the level of severe. The Tenth Circuit has determined that conduct is severe in only extreme circumstances. See Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1242-43 (10th Cir. 2001)(harasser "knocked [plaintiff] to the ground, undressed her and digitally penetrated her, bit and choked her, and repeatedly threatened to kill her."); Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (10th Cir. 1998)(harasser grabbed plaintiff's breast and pulled her hair).

In considering whether the conduct was pervasive, the court must consider the "number, sequence, and timing of the conduct." Smith, 129 F.3d at 1415. The court must also weigh "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Turnbull, 255 F.3d at 1243. The law also requires the court to consider the setting and context in which the incidents occurred. Smith v. Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1414 (10th Cir. 1997). This setting was a small county jail. The facts demonstrate that plaintiff consistently used profanity in her reports,

along with other corrections officers. Accordingly, it is appropriate to evaluate the claim in the context of an environment where explicit language is commonly used. Gross v. Burggraf Const. Co., 53 F.3d 1531, 1538 (10th Cir. 1995)("Speech that might be offensive or unacceptable in a prep school faculty meeting, or on the floor of Congress, is tolerated in other work environments.")

After considering the incidents and the environment, the court finds that the harassment was not pervasive. These incidents primarily occurred in one evening and, while not professional, did not include propositioning or any sexual offensive touching. See Smith, 129 F.3d at 1414 ("isolated incidents of harassment, while inappropriate and boorish, do not constitute pervasive conduct"). The court determines that the comments made by Shultz were mere offensive utterances. The conduct does not rise to a pervasive hostile environment. See Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998)(no actionable hostile environment claim when harasser made comments on wet dreams, plaintiff's exposed bra strap, ability to get in plaintiff's drawers anytime, and asked plaintiff what she was wearing under her dress); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1366 (10th Cir. 1997)(harasser stating that neck chains sound kinky, asking plaintiff to undo top button, comments about PMS and its effect on women and telling plaintiff that you got to get it when you can while looking down plaintiff's dress were not sufficient to establish hostile environment).

Defendants' motion for summary judgment on plaintiff's hostile environment claim is therefore granted.

**B.  Sex Discrimination**

Plaintiff also asserts that defendants discriminated against her because of her sex.  In order to establish a prima facie case of sex discrimination, plaintiff must prove 1) she belongs to a protected group; 2) she was qualified for the position; 3) despite adequate performance, she was subjected to an adverse employment action; and 4) circumstances giving rise to an inference of discrimination (e.g. similarly situated, male employees were treated more favorably).  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).  For the purposes of this motion, defendants have only disputed the fourth element.

Plaintiff has asserted that she was disciplined for opening the doors and allowing the inmates to run the halls, failing to report Lerch smoking and improperly using 911 dispatch equipment.  Plaintiff argues that Lerch was not disciplined for allowing the inmates out or his act of smoking.  Defendants assert that Lerch is not similarly situated to Nottingham since she had been promoted.  Nottingham has testified that at the date in question she had not been promoted.  Accordingly, the court finds that a dispute exists as to whether Nottingham and Lerch were similarly situated.  However, the record is clear that Johnson, who also used the 911 equipment, was not an employee of the jail.  Therefore, Shultz was unable to reprimand him for use of the 911 equipment.  The court finds that plaintiff cannot make a prima facie case against defendants for the 911 incident.

Since a dispute exists as to whether Nottingham was similarly situated to Lerch, defendants' motion for summary judgment on plaintiff's sex discrimination claim is denied.

**C.   Retaliation**

Title VII makes it an unlawful employment practice for an employer "to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter [.]"  42 U.S.C. § 2000e-3(a).  In order to establish a prima facie case of retaliation, plaintiff must show (1) she engaged in protected opposition to discrimination; (2) defendants took an adverse employment action against her; and (3) a causal connection between the protected activity and the adverse action.  Jeffries v. Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998).  Defendants assert that plaintiff cannot establish either the first or last prong.  The court agrees.

To establish that Nottingham engaged in protected opposition to discrimination, she must have, at the least, made informal complaints to superiors or used the employer's internal grievance procedures. Robbins v. Jefferson County School Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999). Here, however, plaintiff attempted to complain to county officials but did not follow through.  Instead, the individuals she informed were other officers and not superiors.  Plaintiff did not complain to a superior until after defendants terminated her employment.

Moreover, plaintiff has failed to establish that Shultz knew about her allegations.  Plaintiff asserts that Shultz knew on the day of her termination that she had documented her allegations.  There is no factual basis, however, to support a finding that Shultz knew prior to her termination and not after.

Accordingly, defendants' motion for summary judgment on

-9-

plaintiff's claim for retaliation is granted.

**IV. CONCLUSION**

Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment on plaintiff's claims for hostile environment is granted. Defendants' motion for summary judgment on plaintiff's sex discrimination based on incidents in which Lerch was not disciplined is denied and the motion for summary judgment based on the 911 incident is granted. Defendants' motion for summary judgment on plaintiff's retaliation claim is granted.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __10th__ day of February 2006, at Wichita, Kansas.

                                                  s/ Monti Belot  
                                                  Monti L. Belot  
                                                  UNITED STATES DISTRICT JUDGE